UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Select Comfort Corp.,

Plaintiff,

v.

Civil No. 11-621 (JNE/JSM)
ORDER

The Sleep Better Store, LLC,

Defendant.

Plaintiff Select Comfort Corporation ("Select Comfort") brought this action against Defendant The Sleep Better Store, LLC ("Sleep Better"), alleging various unfair competition and trademark infringement claims. In its Answer, Sleep Better alleged a counterclaim of tortious interference with contract (Count II), based upon a cease-and-desist letter that Select Comfort sent to third-party Overstock.com. Now before the Court is Select Comfort's 12(b)(6) Motion to Dismiss Count II of Defendant's Amended Answer and Counterclaim.

## I. BACKGROUND

Select Comfort sells adjustable air beds under the Sleep Number® and Select Comfort® trademarks. Sleep Better, which recently changed its name to Dream Number, also sells adjustable air beds. Sleep Better contracted with Overstock.com to sell Sleep Better's beds on the Overstock.com website. On June 30, 2011, Select Comfort sent a cease-and-desist letter to Overstock.com. The letter stated, in relevant part:

> It has recently come to our attention that Overstock.com is infringing Select Comfort's trademark rights under the federal Lanham Act and under state laws by using "Number Air Mattress" on its website located at www.overstock.com regarding the sale of adjustable air beds/mattresses. It is also using this term in advertisements on Nextag.com. We believe Overstock.com's use of the term "Number Air Mattress" is likely to cause confusion or mistake among consumers, or to deceive consumers as to the origin of Overstock.com's goods or as to Select Comfort's affiliation or connection with, or sponsorship or approval of, Overstock.com's goods

> and/or services or commercial activities. Furthermore, your use of the mark "Number Air Mattress" dilutes Select Comfort's famous and distinctive Sleep Number mark and creates an association with Select Comfort's mark that impairs its distinctiveness.
>
> Select Comfort has been vigorous in protecting its marks, and has successfully prevented registration and use of other "Number" marks for beds, adjustable beds and the like. Select Comfort believes the likelihood for confusion and dilution is high when Overstock.com uses "Number Air Mattress" in connection with the promotion and sale of products on Overstock.com and Select Comfort will continue to protect its valuable Sleep Number mark in these instances.
>
> Select Comfort demands that Overstock.com immediately cease and desist from further use in any medium of the term "Number Air Mattress" or any similar term that would unlawfully cause confusion among consumers or dilute Select Comfort's marks.

Sleep Number has not registered the phrases "Number Air Mattress" or "Number Bed" with the U.S. Patent and Trademark Office. Nevertheless, in response to the cease-and-desist letter, Overstock.com agreed to stop using the phrase on its website. Although Select Comfort did not specifically request that Overstock.com remove any products from its website, Overstock.com also chose to remove Sleep Better's beds from sale on its website.

Sleep Better contends that Select Comfort's cease-and-desist letter constituted tortious interference with Sleep Better's contract with Overstock.com. In its Answer to First Amended Complaint and Counterclaim, Sleep Better alleged that Select Comfort's cease-and-desist letter was an improper and unjustified demand, which "intentionally procured the breach of Sleep Better's contract with Overstock.com because Plaintiff's conduct resulted in Overstock.com's removal of Sleep Better's Number Beds from sale on Overstock.com's website." Answer to First Am. Comp. & Countercl. ¶¶ 13, 15. Select Comfort argues that the Court should dismiss the counterclaim because: (1) Sleep Better failed to plead the element that Select Comfort's demand letter procured an actual breach of contract between Sleep Better and Overstock.com;

(2) Select Comfort was justified in sending the demand letter to protect its federally registered Sleep Number® trademarks; (3) the *Noerr-Pennington* doctrine immunizes the pre-suit demand letter from tort liability; and (4) Minnesota's anti-SLAPP statutes protect Select Comfort from tort liability as a matter of law.

## II. DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court "generally may not consider materials outside the pleadings," but "[i]t may . . . consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir.2008) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999)). The cease-and-desist letter was attached to the Answer to the First Amended Complaint and Counterclaim, and thus may be considered. *See, e.g.*, *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (considering exhibits attached to the complaint as part of the complaint).

**A. Failure to Plead the Essential Elements of a Tortious Interference with Contract Claim**

Under Minnesota law, a cause of action for tortious interference with contract requires Sleep Better to prove: (1) the existence of a contract between Sleep Better and a third party; (2) Select Comfort's knowledge of the contract; (3) Select Comfort intentionally procured the breach of Sleep Better's contract; (4) Select Comfort's procurement was without justification; and (5) resulting damages. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998). Select Comfort asserts that Sleep Better failed to plead the essential element that Select Comfort's demand letter procured an actual breach of contract between Sleep Better and third-party Overstock.com. Select Comfort further asserts that it was justified in sending a letter to Overstock.com to protect its federally registered and incontestable Sleep Number® trademarks.

***1. Intentional Procurement of Breach***

Select Comfort argues that Sleep Better merely alleges that after Select Comfort sent its cease-and-desist letter, Overstock.com removed Defendant's products from sale on its website—but Sleep Better "does not claim, or even suggest, that Overstock.com's decision to 'remove' its products was a breach of contract." Pl.'s Mem. Supp. 6. Select Comfort suggests that Overstock.com may have had the unilateral right to remove Sleep Better's products from its website, and so there may not have even been a breach of contract at all. Although Sleep Better's pleading does not directly allege that Overstock.com breached its contract with Sleep Better, it does allege that Select Comfort "intentionally procured the breach of Sleep Better's contract with Overstock.com because Plaintiff's conduct resulted in Overstock.com's removal of Sleep Better's Number Beds from sale on Overstock.com's website." Answer to First Am. Compl. & Countercl. ¶ 15. When granting all reasonable inferences in favor of Sleep Better, a fair reading of this paragraph adequately alleges an actual breach of contract.

***2. Justification***

Select Comfort asserts that it was justified in sending a letter to Overstock.com to protect its federally registered and incontestable Sleep Number® trademarks. Although justification is an affirmative defense, under certain circumstances it may nevertheless provide the basis for a dismissal pursuant to Rule 12(b)(6). *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982-83 (8th Cir. 2008). "If an affirmative defense such as a privilege is apparent on the face of the complaint . . . that privilege can provide the basis for dismissal under Rule 12(b)(6)." *Id.* at 983. "[T]his means simply that the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint." *Id.*

"Generally, a defendant's actions are justified if it pursues its legal rights via legal means." *Id.* (citing *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 32-33 (Minn. 1982)); *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994) ("There is no wrongful interference with a contract where one asserts in good faith a legally protected interest of his own * * * believ[ing] that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." (internal quotation marks omitted)). "The general rule with which we are concerned is that one has the right to be secure in his contracts and to pursue his business . . . free from the interference of others except where such others act in pursuance of a superior or equal right." *Noble Sys. Corp.*, 543 F.3d at 983 (quoting *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 897 (Minn. 1965)); *Bennett*, 134 N.W.2d at 897 ("Liability for wrongful interference may be avoided by showing that the defendant was justified by a lawful object which he had a right to assert."). Interference with a contract is unjustified, however, "when it is done for the indirect purpose of injuring the plaintiff or benefitting the defendant." *Furlev Sales*

*& Assoc., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 27 (Minn. 1982). "Ordinarily, whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances." *Kjesbo*, 517 N.W.2d at 588 (citing *Bennett*, 134 N.W.2d at 900). Select Comfort has the burden of proving justification. *See id.*

It is undisputed that Select Comfort has a legally protected interest in protecting its registered trademarks. Sleep Better concedes that it would have been reasonable for Select Comfort to "alert Overstock.com as to Plaintiff's 'Sleep Number' mark." Def.'s Resp. Mem. 10. Sleep Better argues, however, that it was not reasonable for Select Comfort "to claim that Overstock.com's use of the term 'Number Air Mattress' constituted infringement or that the use of this term might cause consumer confusion or dilution of Plaintiff's 'Sleep Number' marks." *Id.* Sleep Better asserts that Select Comfort's demand letter was unjustified because Select Comfort had not registered the specific phrase "Number Air Mattress," and because, at least according to Sleep Better, the phrase "Number Air Mattress" is a purely descriptive term, which Sleep Better has been using since 2002. Sleep Better further argues that Select Comfort failed to provide any evidence of actual consumer confusion. Thus, Sleep Better contends that Select Comfort was unjustified because its motives were purely "designed to injure Sleep Better and benefit [Select Comfort]." *Id.*

The crux of Sleep Better's argument appears to be that Select Comfort was unjustified because, having not registered the specific phrase "Number Air Mattress," it could not reasonably assert that use of that phrase infringed its registered trademarks. To the extent that this is the argument, Sleep Better misconstrues the protections afforded by trademark law. Trademark law protects against not only the impermissible use of a specific registered mark, but also against the use of a similar mark that is likely to cause confusion among consumers or

dilution of the registered mark. *See* 15 U.S.C. § 1114 (prohibiting the commercial use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive"); *Id.* § 1125(a) (prohibiting the "use[] in commerce [of] any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion, or to cause mistake, or to deceive"); *Id.* § 1125(c) (providing that "the owner of a famous mark that is distinctive . . . shall be entitled to an injunction against another person who . . . commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, or of actual economic injury"); *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980) (affirming the district court's holding that use of the "QUIRST" mark infringed on the well-established "SQUIRT" mark); *Roederer v. J. Garcia Carrión, S.A.*, 732 F. Supp. 2d 836 (D. Minn. 2010) (finding trademark infringement and unfair competition where the defendant's unregistered "CRISTALINO" mark was similar to the plaintiffs registered "CRISTAL" mark and created a likelihood of confusion).

An infringing mark need only "resemble the registered mark" so that its use is "likely to cause confusion, or to cause mistake, or to deceive." *SquirtCo*, 628 F.2d at 1091. There is no support for Sleep Better's proposition that a cease-and-desist letter is only justified where the allegedly infringing term is identical to the registered mark. Moreover, Select Comfort need not be correct in its assertion that use of the term "Number Air Mattress" infringed or diluted its "Sleep Number" mark—it must only have "a good faith belief that its rights were being infringed." *Kemp v. Tyson Foods, Inc.*, No. CIV 96-173 JRT/RLE, 2001 WL 391552, at *7 (D. Minn. Mar. 31, 2001); *see also Celotex Co. v. Insulite Co.*, 39 F.2d 213, 217 (D. Minn. 1930)

(explaining that when examining the propriety of pre-suit demand letters alleging patent infringement, the court need not determine whether infringement actually exists, but instead should only examine "whether the owner of such patent might believe in good faith" that infringement existed).

Here there is no indication that the demand letter was sent in bad faith or with an improper motive. First, despite Sleep Better's assertions, Select Comfort's letter did not falsely claim or misrepresent that Select Comfort had trademark rights to the phrase "Number Air Mattress"—it only claimed that use of such phrase caused confusion with or dilution of its registered "Sleep Number" mark. Second, any contention that Select Comfort's position was so incorrect on the face of the letter as to demonstrate bad faith is without merit. In fact, in its counterclaim, Sleep Better acknowledges that one of the issues in this current litigation is Select Comfort's belief that the term "Number Bed" infringes its "Sleep Number" trademark. Answer to First Am. Compl. & Countercl. ¶ 9. This is essentially the same type of alleged infringement as described in the letter to Overstock.com. If, as Sleep Better asserts, use of the phrase "Number Air Mattress" or "Number Bed" so clearly does not infringe Select Comfort's registered trademark, then Sleep Better could have brought its own motion to dismiss for failure to state a claim. It has not done so. The fact that Select Comfort's lawsuit against Sleep Better is based upon the same type of infringement as described in the cease-and-desist letter to Overstock.com is only further support that Select Comfort's demand was not made in bad faith.

Nor did Select Comfort employ any improper, illegal, or otherwise reprehensible means in sending the cease-and-desist letter to Overstock.com.[1] It has long been established that the

[1] Sleep Better does not appear to argue that Select Comfort employed improper means by sending a cease-and-desist letter. In fact, Sleep Better contends that had Overstock.com merely learned about its possible infringement by reading about this publicly-filed lawsuit between

owner of an intellectual property right "may notify infringers of his claims, and warn them that, unless they desist, suits will be brought to protect him in his legal rights." *Virtue v. Creamery Package Mfg. Co.*, 179 F. 115, 120 (8th Cir. 1910). "The only limitation on the right to issue such warnings is the requirement of good faith." *Id.* Pre-suit warning letters are "a common, if not universal, feature of modern litigation," especially in the context of enforcing intellectual property rights. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006); *see also Cardtoons v. Major League Baseball Players Ass'n*, 208 F.3d 885, 894 (10th Cir. 2000) (Lucero, J., dissenting) (noting "the reality of intellectual property law, in which the enforcement of legal rights, and thus the invocation of the legal process, is customarily commenced by a cease-and-desist letter"). Such pre-suit warning letters are not only permissible, but in some cases they may actually be required. For example, trademark law requires that a defendant in a trademark infringement action have notice of the registered trademark. *See* 15 U.S.C. § 1111 (2006). Further, it is sound public policy to encourage the use of pre-suit warning letters, rather than mandate a straight line to the court whenever a potential dispute arises. As the Eighth Circuit noted, the issuance of such a warning "would seem to be an act of prudence, if not of kindness." *Virtue*, 179 F. at 120 (internal quotation marks omitted). Often such warnings result in final resolution of the dispute without the intervention of the courts. Even if they do not, they still can "streamlin[e] any subsequent litigation" and "reduc[e] legal costs and facilitat[e] access to the courts." *Sosa*, 437 F.3d at 936.

---

Select Comfort and Sleep Better, and as a result of obtaining that information chosen to remove Sleep Better's products from its website, then that, too, would have been unjustified interference by Select Comfort with the Sleep Better-Overstock.com contract. Thus, according to Sleep Better, *any* action performed by Select Comfort, no matter how remote or how lawful, that resulted in the Overstock.com's decision to remove Sleep Better's beds from its website would constitute tortious interference.

It is apparent on the face of the cease-and-desist letter that Select Comfort was seeking to protect its registered "Sleep Number®" trademark from confusion and dilution. There are no factual allegations in the pleadings to support any claims that Select Comfort acted with bad faith or employed improper means. Sleep Better's mere conclusory assertions that Select Comfort's conduct in sending the cease-and-desist letter was "improper," "unjustified," "intentional," and "willful" do not create a plausible claim of bad faith. *See Iqbal*, 129 S.Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)). For that reason, Sleep Better's tortious interference with contract counterclaim must be dismissed.

***B.* Noerr-Pennington *Immunity***

The *Noerr-Pennington* doctrine immunizes acts related to the constitutional right to petition the courts for grievance, unless the act is a mere sham. The First Amendment to the United States Constitution provides that Congress shall make no law abridging the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. The *Noerr-Pennington* doctrine, which arose in the context of antitrust claims, provides immunity from claims that are based on the filing of lawsuits. "The right of access to the courts is indeed but one aspect of the right of petition." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). This immunity has been extended to all claims, beyond federal antitrust claims, which are based on the petitioning of the courts or other governmental entities. *See, e.g.*, *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 n.4 (8th Cir. 1999) ("In addition, the First Amendment generally immunizes the act of filing a lawsuit from tort liability under the *Noerr-Pennington* doctrine."); *Hinshaw v. Smith*, 436 F.3d 997, 1003 (8th Cir. 2006) (stating that the *Noerr-Pennington* doctrine "is a defense to liability premised on the defendant's actions of

exercising his own private rights to free speech and to petition the government"); *Kellar v. VonHoltum*, 568 N.W.2d 186, 192-93 (Minn. Ct. App. 1997) (holding that the *Noerr-Pennington* doctrine applies outside of the antitrust context and applying it to Minnesota tort claims). The Eighth Circuit has explicitly stated that the *Noerr-Pennington* doctrine applies to tortious interference with contract claims. *See Hufsmith v. Weaver*, 817 F.2d 455, 459 (8th Cir. 1987). Because "[t]he right to petition means more than simply the right to communicate directly with the government," protection under the doctrine "necessarily includes those activities reasonably and normally attendant to effective petitioning." *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1310 (8th Cir. 1985).

Select Comfort argues that the *Noerr-Pennington* doctrine immunizes pre-suit demand letters, since such letters are "reasonably attendant to effective petitioning." Sleep Better contends that the doctrine does not apply in this context, since this case involves no antitrust claim and the demand letter was not sent to the government, does not ask the government for any "redress of grievances," and has not resulted in litigation against Overstock.com. Thus, Sleep Better asserts that there was no petition of the government, and "purely private threats of litigation" are not afforded immunity under the doctrine.

Although the Eighth Circuit Court of Appeals has not addressed this issue, this Court is not without guidance. Of the seven other circuit courts that have encountered this question, six have found that the *Noerr-Pennington* doctrine immunizes pre-suit demand letters, so long as those demand letters are not a "sham." *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006); *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 100 (2d Cir. 2000); *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343-44 (Fed. Cir. 1999); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992); *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842,

850-51 (1st Cir. 1985); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366-67 (5th Cir. 1983).

In *Sosa*, a satellite television broadcaster sent more than 100,000 letters accusing the recipients of signal theft and violations of federal criminal statutes and threatening civil legal action unless the recipients agreed to pay an unspecified sum to settle the claim. 437 F.3d at 926. Although a number of recipients claimed to be innocent of the alleged conduct, the broadcaster would not withdraw its accusations or threats of litigation. *Id.* at 926-27. To avoid the costs of litigation, the recipients agreed to the settlement. *Id.* at 927. Subsequently, some of these recipients filed a class action lawsuit, claiming that the broadcaster violated the Racketeer Influenced and Corrupt Organizations Act (RICO) through its mailing of baseless pre-suit demand letters. The district court dismissed the suit based on the *Noerr-Pennington* doctrine, and plaintiffs appealed. The Ninth Circuit affirmed the district court's dismissal, holding that *Noerr-Pennington* immunity extended to pre-litigation demand letters that were not a sham. "In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition." *Id.* at 931-32 (quoting *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 531 (2002)). "Although the letters were not themselves petitions, the Petition Clause may nevertheless preclude burdening them so as to preserve the breathing space required for the effective exercise of the rights it protects." *Id.* at 933. The court recognized that the *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution" of a lawsuit and stated that "where the underlying litigation fell within the protection of the Petition Clause, such incidental conduct would also be protected." *Id.* at 935. "While responding to demands to settle unfounded claims is burdensome, it is likely less burdensome than if the opposing party, fearing liability in tort for demanding settlement of a possibly weak

claim, proceeded directly to litigation. Moreover, the established sham exception to the *Noerr-Pennington* doctrine provides adequate protection against baseless claims asserted in prelitigation settlement letters." *Id.* at 935-36. The court concluded that restrictions on pre-suit demand letters may therefore raise substantial Petition Clause issues.

Only one circuit court has held otherwise. In *Cardtoons v. Major League Baseball Players Ass'n*, 208 F.3d 885 (10th Cir. 2000) (en banc), the Tenth Circuit held 7-3 that the First Amendment right to petition does not provide immunity from tort claims that are triggered by a pre-litigation cease-and-desist letter communicated between private parties. The court distinguished its case, which involved tort claims, from the other circuits' cases that had involved antitrust claims. In the context of non-antitrust claims, the court stated that "[a] letter from one private party to another private party simply does not implicate the right to petition, regardless of what the letter threatens." Because the letter was not sent to the government, did not ask the government for redress of grievances, and was not known to the government prior to the lawsuit, the court found that *Noerr-Pennington* immunity did not apply.

The dissent in *Cardtoons*, however, rejected any distinction between antitrust cases and tort cases, explaining that although the doctrine arose in the antitrust context, the Supreme Court has focused its *Noerr-Pennington* analysis on the right to petition. *Id.* at 895-96 (Lucero, J., dissenting) ("Because of its foundation in the First Amendment right to petition, the Supreme Court has applied the *Noerr-Pennington* doctrine, by analogy, outside of it aborigine roots in antitrust law. . . . In light of [Supreme Court decisions], there can be little doubt that *Noerr-Pennington* immunity . . . is mandated by the First Amendment right to petition, irrespective of any independent statutory basis it might also have, and '*Noerr-Pennington* immunity' has

evolved into an umbrella term for First Amendment petitioning immunity.”).[2] The dissent explained that cease-and-desist letters promote the interests served by the right to petition the courts—“[t]hey vindicate legal rights and promote adherence to important laws of commerce” and “are frequently used . . . to protect and vindicate [] intellectual property rights.” *Id.* at 897. Because “such letters are often the first formal step in the process of enforcing the law of intellectual property and vindicating economic interests,” the denial of *Noerr-Pennington* immunity to such letters would “chill[] the right to petition the courts by handicapping activity immediately precedent to, and intimately associated with, recourse to the judicial process.” *Id.* at 898.

The Court finds the reasoning articulated by the overwhelming majority of circuits and the dissent in *Cardtoons* to be persuasive. Sleep Better’s argument that the Court should disregard the circuit court opinions dealing with antitrust claims is unavailing—the distinction between antitrust and non-antitrust cases is not relevant to the *Noerr-Pennington* analysis, given the Supreme Court’s focus on the First Amendment right to petition, rather than a statutory construction of the Sherman Act. *See Cal. Motor Transport Co.*, 404 U.S. 508; *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d at 1311 (stating that in *California Motor Transport Co.*, the Supreme Court “explained the [*Noerr*] decision as resting squarely on the constitutionally guaranteed right to petition the government”); *Hufsmith*, 817 F.2d at 460 (holding that where *Noerr-Pennington* immunized conduct that formed the basis of an antitrust claim, the doctrine also extended to bar a tortious interference with contract claim based on the same conduct).

---

[2] The dissent explained that in *California Motor Transport Co.*, 404 U.S. 508, the Supreme Court extended *Noerr-Pennington* immunity to the petitioning of courts. *Cardtoons*, 208 F.3d at 894. In doing so, “the Court relied primarily on the constitutional underpinnings of the doctrine,” not the statutory basis in antitrust law. *Id.* at 894-95.

Moreover, *Cardtoons* simply does not apply where the statute creating the very rights to be protected provides for notice to potential litigants. *See, e.g.*, *Keystone Retaining Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, No. 00-496, 2001 WL 951582, at *11 (D. Minn. Aug. 22, 2001) (distinguishing its facts from *Cardtoons* by noting that the patent statutes require notification of infringement prior to recovering damages, and that "the notice requirement of 35 U.S.C. § 287 put [plaintiff]'s actions within the ambit of immunized activity under the *Noerr-Pennington* doctrine.").[3] Like patent statutes, the trademark statutes also require such notice. *See* 15 U.S.C. § 1111 (2006) ("[I]n any suit for infringement . . . by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered . . . unless the defendant had actual notice of the registration."). Therefore, even if the Court were to adopt the reasoning in *Cardtoons*, it would nevertheless be inapplicable to the case at hand.

In practice, the enforcement of intellectual property rights often begins with a cease-and-desist letter. Accepting Sleep Better's argument would mean "that the First Amendment protects an owner of intellectual property rights who blindsides an adversary with a lawsuit claiming infringement of those rights, but fails to shield that same owner when a more civilized notice and demand letter is sent in advance." *Cardtoons*, 208 F.3d at 894 (Lucero, J., dissenting); *see also Coastal States Mktg., Inc.*, 694 F.2d at 1367 ("The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute."). The fact that no litigation with Overstock.com ensued only supports the proposition that such letters are desirable methods of petitioning by effectively and efficiently vindicating intellectual property rights. There can be

[3] 35 U.S.C. § 287 provides that when the patented item is not marked as patented, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which even damages may be recovered only for infringement occurring after such notice."

no doubt that Select Comfort would be entitled to immunity had it simply filed a complaint against Overstock.com for infringement. Rather than suing Overstock.com, however, Select Comfort chose the "more civilized" route of sending a pre-suit demand letter.

Sleep Better argues that even if *Noerr-Pennington* immunity applies to pre-suit demand letters outside of the antitrust context, Select Comfort's conduct is still not immunized because it was merely a sham intended to disguise anticompetitive conduct. The Court disagrees. The "sham exception" applies when a lawsuit (or threatened lawsuit) is so "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). But "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *Id.* Even when the litigation is objectively meritless, the inquiry does not end there—the court must then "examine the litigant's subjective motivation." *Id.* at 60. To defeat a claim of *Noerr* immunity, a party must "demonstrate[e] both the objective and the subjective components of a sham." *Id.* at 61.

Sleep Better asserts that Select Comfort's threat of litigation was baseless because Select Comfort had not registered the term "Number Air Mattress," and according to Sleep Better, the term is a purely descriptive phrase that it had been using for years. For the same reasons, Sleep Better also argues that Select Comfort misrepresented its right to the "Number Air Mattress." Because Sleep Better believes that Select Comfort "was incorrect to state that Overstock's use of the term infringed [Select Comfort]'s trademark rights," it contends that the letter was merely a sham to disguise Select Comfort's anticompetitive behavior.

Again, Sleep Better's argument hinges on its assertion that Select Comfort is just flat-out wrong in its allegation of trademark infringement. But whether the demand letter is a "sham"

does not depend on Select Comfort's ultimate success or failure in pursuing its trademark infringement claims. *See, e.g.*, *BE & K Const. Co.*, 536 U.S. at 531-32 (considering "reasonably based but unsuccessful lawsuits" and stating that the doctrine "protect[s] petitioning whenever it is genuine, not simply when it triumphs."). Moreover, as noted above, the pleadings do not reveal Select Comfort's claim to be objectively baseless. Even if it were a losing claim, more than that is needed to prove that a threat of litigation is a "sham." As the Eighth Circuit noted,

> [A] defendant's invocation of adjudicative process to press legitimate claims is protected even though its purpose in doing so is to eliminate competition. . . . It is only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process, that the *Noerr-Pennington* cloak of immunity provides no protection.

*Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985); *see also id.* at 488 (finding immaterial whether the defendants' motive was selfish or not). Here, there has been no indication of any such illegal or reprehensible practices or that the letter was merely a "sham" to conceal some sinister motive. Despite Sleep Better's argument that the cease-and-desist letter misrepresented Select Comfort's rights, the Court finds nothing in the pleadings to support this contention. Select Comfort did not assert that it had registered the specific phrase "Number Air Mattress"—rather, it stated only that Select Comfort believed that use of that phrase caused confusion with or dilution of its registered "Sleep Number" mark. On its face, the cease-and-desist letter articulates precisely the type of concerns that can legitimately form the basis of a lawsuit to protect federally registered trademarks.

  Pre-suit demand letters are customarily used to protect intellectual property rights. These letters are "reasonably attendant" to litigation, especially where the trademark statute explicitly provides for such pre-suit notification to alleged infringers. Absent any indication that Select

Comfort's cease-and-desist letter was a "sham," the Court finds that the *Noerr-Pennington* doctrine immunizes Select Comfort from Sleep Better's tortious interference with contract counterclaim.[4]

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Select Comfort's Renewed Motion to Dismiss Count II of Defendant's Answer to First Amended Answer and Counterclaim [Docket No. 54] is GRANTED.
2. Sleep Better's counterclaim of tortious interference with contract (Count II) is DISMISSED.

Dated: March 2, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

4 Because of the Court's rulings on justification and application of the *Noerr-Pennington* doctrine, the Court declines to address Select Comfort's anti-SLAPP arguments.